UNITED STATES DISTRICT COURT
SOUTHERN DISCRICT OF NEW YORK

| | |
|---|---|
| THE HOLY SPIRIT ASSOCIATION FOR THE UNIFICATION OF WORLD CHRISTIANITY,<br><br>                                                    Plaintiff,<br><br>~against~<br><br><br><br>MICKEY BARRETO, MICKEY BARRETO MISSIONS,<br>                                                    Defendants. | Case 1: _____ - cv - _____ - ____<br><br>Formerly, N.Y. Supreme Court<br>Case # 155828/2019<br><br>**IRS REPORTABLE TRANSACTION<br>NUMBER MA 20-00002491**<br><br><br><br>**NOTICE OF REMOVAL** |

TO:   The Clerk of the United States District Court for the Southern District of New York.

PLEASE TAKE NOTICE that defendant Mickey Barreto (Barreto), acting *pro se*, hereby removes this action—pursuant to 29 U.S.C. § 1446(c)(3); The Justice Against Sponsors of Terrorism Act;  28 U.S.C. §§ 1330; 1331; 1332(a)(1-4); 1353; 1367; 1443 (1); 1446; 1602 et seq. (FSIA) and 1603(a), (b)—from the Supreme Court of the State of New York, County of New York (the "State Court"), one of the courts of the New York State Unified Court System, to the United States District Court for the Southern District of New York (SDNY).

1. **Information on the Plaintiff and on the Case Being Removed.**
2. On April 15, 2022, The Holy Spirit Association for the Unification of World Christianity, the plaintiff (HSA-UWC, the "Plaintiff") in the above captioned case (the "Case") served Barreto via email—and Barreto accepted said service (see, **Exhibit A**: **Decision and Order**—, a Decision and Order by the State Court on its own motion (the

"Decision") referring the Case to a "Special Referee" for determination of the following issues:

   a. The issue of whether Barreto should be held in criminal contempt of an order by the State Court dated October 18, 2019 (the "Order") and the proper remedy.

   b. The issue of whether Barreto should be held in civil contempt of the Order and the proper remedy.

3. The service of the Case as an "order" marked the start of a 30-day window for the filing of this removal pursuant to 28 U.S.C. § 1446(c)(3).

4. The Order refers the case comprising of several documents part of motion number four of a case under the same index number in that same state court, which motion number four has been ordered by the State Court to be heard by a Judicial Hearing Officer.

5. The documents included in motion number four are herein attached as **Exhibits B through G: Motion 004 Docs**.

6. The issues to be reviewed by Special Referee include an international final judgment of possession issued pursuant to an out of court settlement agreement by all the parties of the Case (see, **Exhibits H and I: Settlement Agreement)** where a final judgment of possession was issued (see, Pages 46 to 47 of Exhibit E) by a specified umpire who has the legal authority to issue final judgments of possession and who the parties agreed and bound themselves to obey (see, Pages 57 to 59 of Exhibit H).

7. Plaintiff has agreed to transfer control of all Plaintiff's operations to Barreto, see, Exhibits H and I, but Plaintiff has used intimidation and force against Barreto to remain in *de facto* control by an individual from North Korea, Dr. Hak Ja Han.

8. **Although the Identity of Plaintiff in Itself is a Defense, the Following Paragraphs 9 through 12 Further Identify Plaintiff for Removal Purposes and not as a Defense:**

9. Plaintiff is North Korea:

    a. As North Korea, Plaintiff is the target of several sanctions including sanctions promulgated by Executive Order 13551 of August 30, 2010 ("EO13551", 31 C.F.R. §510 app B to Part 510).

    b. Section 4(d) of EO13551 provides that the "term "North Korea" includes the territory of the Democratic People's Republic of Korea and the Government of North Korea."

    c. Plaintiff does not deny as Plaintiff publicly admits that Plaintiff still is *de facto* controlled by Dr. Hak Ja Han (Dr. Han), an individual from North Korea who controls businesses in North Korea in partnership with the Government of North Korea.

    d. Pursuant to 31 CFR § 510.311(c), Dr. Han is The Government of North Korea.

    e. Plaintiff owns businesses in North Korea in partnership with and under the control of the Government of North Korea and Plaintiff is controlled by Dr. Han aka The Government of North Korea, therefore, Plaintiff is the Government of North Korea pursuant 31 CFR §§ 510.311, 510.411.

    f. The Government of North Korea controls The Democratic People's Republic of Korea (DPRK, "North Korea"), a state designated by the U.S. Secretary of State as a State Sponsor of Terrorism on November 20, 2017, and Plaintiff's New York proceeds are used to finance North Korea's efforts that are against the best interest of the People of the United States and aggrieves Barreto.

    g.  Plaintiff is a state sponsor of terrorism connected to at least one international terrorist organization:

        i.  The North Korea State Sponsor of Terrorism Designation Act of 2017 in referring to Plaintiff as the "Government of North Korea" determined, *inter alia*, that …

        ii.  Plaintiff "*has harbored members of the of the Japanese Red Army since a 1970 high jacking and continues to harbor the surviving hijackers to this day.*"

    h.  Plaintiff embezzles funds that should be going to a California trust for the benefit of a group of Native American descendants and diverts said embezzled funds overseas for the benefit of, *inter alia*, the Government of North Korea to produce weapons of mass destruction in North Korea.

    i.  Even when accepting that Plaintiff is an otherwise innocent U.S. entity, Plaintiff violates several sanctions imposed by the U.S. Office of Foreign Asset Control (OFAC) because Plaintiff violates at least the entire 31 CFR §§ 510.201-510.214.

10. Plaintiff has conducted commercial business activities in the U.S. since at least 1961.

11. Plaintiff first conducted commercial business activities with Barreto on June 18, 2018.

12. Plaintiff is a subversive entity that works to control the U.S. government by force, and to finance the activities of nations that sponsor terrorism, etc., see, Exhibit E starting with Page 60 and Pages 2 through 33 of Exhibit F.

13. **Plaintiff has Committed Acts of Crime Against Barreto and Barreto's Family.**

14. As discussed throughout the Case and as stated herein, Plaintiff has used several methods of force to intimidate or otherwise illegally prevent Barreto from exercising Barreto's legal rights, to affect Barreto's ability to litigate against Plaintiff for Barreto's own legally obtained property rights and as the "blocker" of "blocked property" that was

formerly in the possession of Plaintiff (as these terms are defined by the U.S. Office of Foreign Asset Control, OFAC, pursuant 31 CFR § 510.201(a)):

a. In on July 10, 2018, Barreto proved to a state court in New York that Plaintiff had used self-help to remove Barreto from possession of real estate in Manhattan, see, Page 53 of Exhibit H—New York Rent Stabilization Code section 26-523 provides criminal penalties for self-help evictions.

b. Currently, a U.S. criminal federal investigation is looking into the kidnapping and torture of Barreto's 17-year-old son who was able to escape captivity in Atlanta, Georgia. Plaintiff is a suspect in the 2019-2020 kidnapping and torture of Barreto's 17-year-old son.

c. A private investigation is currently under way to obtain evidence of the exact involvement of Plaintiff in the wrongful seizing and hostage takeover of Barreto's 15-year-old son—as the term "hostage" is defined in Article 1 of the United Nations' International Convention Against the Taking of Hostages of December 17, 1979—who has remained separated from Barreto since September 7, 2021, first as a plain kidnapping of a child and three days later under the color of law, and, as promised by suspect agents of Plaintiff, for as long as Barreto continues litigating against Plaintiff.

d. Barreto himself and the members of his immediate family have been and continue to be the victim of bodily and mental injury in the form of poisoning, physical and mental torture, harassment, physical and sexual assault and battery, death threats, lost income, loss of consortium, etc., all in an attempt to coerce Barreto into giving up his property rights that interfere with Plaintiff's interest and stop litigating against Plaintiff.

15. A Congressional investigation identified Plaintiff, while using the names HSA-UWC, UC, Moon Organization, etc., as an "international organization" in an October 31, 1978, report titled "Investigation of Korean-American Relations" (the "Congressional Report"), that Plaintiff uses different names but "constitute essentially one international organization. This organization depends heavily upon the interchangeability of its components and upon its ability to move personnel and financial assets freely across boundaries and between businesses and nonprofit organizations." (See, Page 30 of Exhibit F)

    a. The Congressional Report determined that Plaintiff, *inter alia*, does or seeks to do the following (See, Pages 30 and 31 of Exhibit F):

        i. Establish a worldwide government controlled by Plaintiff.

        ii. Gain control or establish businesses and other entities in the United States and worldwide through its involvement in politics in the United States at least partly for the benefit of the Korean peninsula or to otherwise change U.S. foreign policy.

        iii. Promote the interests of the Korean peninsula both in cooperation and sometimes under the direction of foreign governments, agencies, and officials.

        iv. Promote its own political and economic interests and those of the Korean peninsula.

        v. Control businesses that are important defense contractors in the Korean peninsula.

        vi. Produce M-16 rifles, antiaircraft guns, and other weapons.

    vii. Negotiate arms deals on behalf of the government of the Korean peninsula.

    viii. Disguise its sources of funds to violate federal securities regulations.

    ix. Use church and other non-profits' tax-exempt status to support its political and economic activities.

16. **Plaintiff is a Subsidiary of Mickey Barreto Missions (MBM).**

17. Mickey Barreto Missions, MBM, is a California religious nonprofit charitable trust and a party to the Case.

18. MBM is Barreto's corporate co-defendant in the case that never made an appearance.

19. Barreto knowns from information and believe that MBM never received proper service of any pleadings of the Case.

20. MBM is the only rightfully and legally installed parent company of Plaintiff.

21. On August 28, 2019, California approved the merger of Plaintiff, as the disappearing company, into MBM, as the surviving company (the "Merger").

22. The Land became trust land for the benefit of a group of descendants of two federally recognized Indian Tribes—the Prairie Band Pottawatomi Nation and the Confederate Tribes of the Umatilla Indian Reservation—and descendants of the Yapeyu Indians of South America.

23. Said descendants form The Beautiful Nation of the Moon and of the Sun (BNMS), an Indian Tribe, and said descendants are the "BNMS Members".

24. Shares of stocks of MBMH Holdings, Inc, a Delaware corporation, representing beneficial ownership of all assets of Plaintiff, worldwide, that were issued by MBM on March 9th, 2019.

25. On September 2nd, 2021, after a long legally established and pursued process to dissolve Plaintiff, Barreto became the president of HSA-UWC as per official records of the State of California.

26. HSA-UWC and all entities under it are now subsidiaries of MBM.

27. Plaintiff is, therefore, a subsidiary of MBM controlled by American citizens living in the U.S. for the benefit of BNMS Members.

28. Plaintiff continues to attempt to overturn Barreto's control back to Plaintiff.

29. But any decisions that attempt to transfer control or properties from MB to Plaintiff are "null and void" pursuant 31 CFR § 510.202(e).

30. Any orders that direct the transfer of any rights, titles, control, etc., back to Plaintiff without an OFAC license should be considered "null and void" pursuant to 31 CFR § 510.202(e).

31. The U.S. Internal Revenue Service (IRS), part of the U.S. Department of Treasury, ordered that any papers or communications relating to the Merger should always contain the words "IRS REPORTABLE TRANSACTION NUMBER MA20-002491".

32. Barreto understands that this and other IRS instructions relating to the Merger are conditions imposed by a specific license issued by the IRS pursuant to 31 CFR § 501.801(b)(3).

33. **The Original Dispute Between Barreto and Plaintiff is Over Land**.

34. The land first in dispute between Barreto and Plaintiff (the "Land"), along with all other property that was once in possession of Plaintiff, is blocked property pursuant to 31 CFR §§ 510.201(a).

35. Barreto acquired legal possession of Plaintiff's properties by courts that have the legal power and authority to grant final judgments of possession of land.

36. Barreto first gained possession of the Land by court order after winning a State of New York civil case against Plaintiff on July 10th, 2018, that awarded Barreto a Final Judgment of Possession with a warrant for the eviction of Plaintiff from the sole lot of land located at 481 8th Avenue, Manhattan, New York City, State of New York, demarcated by the City of New York Finance Department as Finance Map Lot # 37, Block 758 (the "Land"). (See, Judge Stoller's Order, Pages 3 through 13 of Exhibit E)

37. On July 12, 2018, Barreto was able to force Plaintiff to surrender at least partial exclusive physical possession of the Land through a State of New York civil and criminal proceeding pursuant NY JUD §§ 751, 773 and 774.

38. The issue of who owns the Land was being held in abeyance by the Supreme Court of New York and now by this court.

39. In State Court, the issue of who owns the Land was held in abeyance pending Special Referee's review, report, and the subsequent determination of the court as to, *inter alia*, the issue, whether Barreto or Plaintiff is the owner of the Land (see, the last paragraph on Page 7 of Exhibit A).

40. Transfers of Plaintiff's properties to Barreto is not an OFAC violation because, *inter alia*, such transfers were done pursuant 31 CFR § 510.202(d).

41. **Grounds for Removal Under Section 205 of the Federal Arbitration Act**

42. The Case is hereby removed pursuant to 9 U.S.C. Chapter 2 §205 of the Federal Arbitration Act.

43. The Case relates to an arbitration agreement or award arising out of legal relationship between Plaintiff and Barreto that involves property located in several different U.S. states and foreign countries and will require performance or enforcement in all domestic and foreign countries.

44. The grounds for this removal do not need to appear on the face of the complaint, and the grounds for this removal do not appear on the face of the complaint.

45. 9 U.S.C. Chapter 2 §205 provides that an action pending in a state court relating to an arbitration agreement or award falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, may be removed to federal court at any time before trial—the case still does not have a final judgment issued by the State Court and no trial has happened because Plaintiff voluntarily dismissed all of its claims with prejudice (see, Page 9 of Exhibit C).

46. Pursuant to 9 U.S.C. Chapter 2 §203, SDNY is one of the courts listed in section 460 of Title 28 as having original jurisdiction over the Case regardless of what the exact amount of the controversy is.

47. **Grounds for Removal Under 28 U.S.C. §1443 – Civil Rights.**

48. The Case is hereby removed under 28 U.S.C. § 1443.

49. The Case presents several civil rights issues that warrant removal under 28 U.S.C. § 1443.

50. Without this removal, Barreto would not be able to successfully claim defenses under the Justice Against Sponsors of Terrorism Act pursuant to 28 U.S.C. § 1443(1).

51. Plaintiff raised a civil rights issue when Plaintiff rebutted Barreto's defense of improper service, etc., by saying that the "14th Amendment of the Constitution" is neither basis for "dismissing" nor "relevant" to the Case, see, Page 22 of Exhibit C.

52. The Land is trust land of group of Indians.

53. In the Case, Plaintiff raises issues that ask this court for interpretation of the Constitution, Presidential Powers, and of the Treaty between the U.S. and the Catholic King of 1819 as applied to protect, guarantee, and enforce the immunity claims of

Barreto as an individual holder of land titles with immunity and hereditary offices attached to those lands including Indian lands. (28 U.S.C. Code § 1353).

54. In reviewing this Notice of Removal, this court should seek to "recognized the substantive causes of action for aiding and abetting and conspiracy liability under chapter 113B of title 18, United States Code". (18 U.S.C. § 2333 note (a) Findings)

55. The actions of Plaintiff amount to, as provided by 18 U.S.C. § 2331, "international terrorism" because Plaintiff's actions as alleged herein, proven herein and as widely known to be as Plaintiff's acts as North Korea, "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State".

56. **Diversity of Citizenship of the Parties Is Provided by the Case.**

57. This removal is not based solely on diversity of citizenship.

58. This case has the necessary diversity of citizenship because Plaintiff is a foreign state as defined in section 1603(a) and Barreto is a citizen of New York.

59. SDNY has original jurisdiction over this action under, 28 U.S.C. § 1332(a) because Plaintiff and defendants have different citizenships, and the amount in controversy exceeds US$75,000.00, exclusive of interests and costs.

    a. The Case will decide the ownership of real estate evaluated by Plaintiff at $400,000,000.00 or four hundred million U.S. dollars.

60. Barreto does not dispute to live at 481 8th Avenue in Manhattan, therefore, although not specifically stated on the Case, Barreto is a citizen of New York for removal purposes.

61. On its face, the Case clearly names the Plaintiff as "The Holy Spirit Association for the Unification of World Christianity" (HSA-UWC) an entity publicly and openly known originally to be from North Korea, Plaintiff will not dispute to be *de facto* controlled by Dr. Hak Ja Han, an individual from North Korea.

62. Plaintiff claims to have been founded by Dr. Hak Ja Han of North Korea, Plaintiff knows and advertises publicly, and the fact is widely known worldwide, and Plaintiff will not dispute that Dr. Hak Ja Han is from North Korea and *de facto* controls Plaintiff from the Korea Peninsula.

63. Plaintiff openly, publicly, and even proudly will not dispute the veracity of the fact that Plaintiff works alongside the Government of North Korea since at least the 1989.

64. Even without any overdue extension of the relevant statutory definitions, Plaintiff is the Government of North Korea.

65. Even without any overdue extension of the relevant statutory definitions, Plaintiff is North Korea.

66. Although unlikely necessary, by applying well recognized framework for civil aiding and abetting, and conspiracy liability theories provided by the U.S. Supreme Court in Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983), and 31 CFR §§ 510.311, 510.411, Plaintiff is North Korea, and Plaintiff is the Government of North Korea, a foreign state for removal purposes.

67. Plaintiff is a "foreign state" as defined in 28 U.S.C. § 1603(a), (b).

    a. Plaintiff is the Government of North Korea.

    b. Plaintiff operates under several different names to appear to be an all-American entity to hide its identity as a foreign entity.

    c. The Amendment does not provide Plaintiff's citizenship or the location of Plaintiff's main office. But the United States has identified Plaintiff as an international organization and as already argued herein, due to Plaintiff's involvement with North Korea, Plaintiff is statutorily described as The Government of North Korea.

68. Mickey Barreto Missions, MBM, is an entity of California and has never appeared in the Case.

69. Pursuant to 28 U.S.C. § 1330, this court "shall have original jurisdiction [over this case] without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a)" and where the foreign state is not entitled to immunity under 28 U.S.C. §§ 1605-1607 and because Plaintiff has agreed to arbitration by a nondomestic referee.

70. Plaintiff is not entitled to immunity under 28 U.S.C. §§ 1605-1607.

71. **The Amendment Presents Issues that Are Federal Questions.**

72. This case should be heard in this court based on federal questions and without any regard to diversity of citizenship pursuant to 28 U.S.C. Code §§ 1331 because the Case presents several issues that are federal questions.

73. Upon the information entered herein, this court should be able to find that the Case falls under the Justice Against Sponsors of Terrorism Act which provides "civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or person that engage in terrorist activities against the United States."

74. Pursuant to 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit appending in a court of the United States, or in a court of a State, or to attend to any other interests of the United States."

75. The actions against Barreto performed by individuals and groups connected with Plaintiff are considered both international and domestic terrorism and have been previously attributed to Plaintiff. The actions are intended to psychologically torture Barreto and intimidate Barreto into withdrawing all Barreto's legal claims against Plaintiff:

76. Plaintiff, as a foreign state, is not immune from the jurisdiction of this court pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 et seq. (FSIA) because the Case arises from Plaintiff's commercial dealings in the United States involving Barreto and Plaintiff's subsequent criminal actions against Barreto, members of his family and his indigenous tribe, which criminal actions started when Plaintiff wrongfully removed, and Plaintiff will not dispute having removed, Barreto from the Land by the use of physical force without a court order and under threats of physical violence on or about June 19th, 2018.

77. Barreto received a nondomestic arbitral award on December 29th, 2021 (the "Arbitral Award"), in Barreto's favor against Plaintiff that Barreto will move to enforce pursuant to FSIA section 1610 upon receipt of a license from OFAC post unblocking of properties by Barreto.

78. Plaintiff brings into question the authenticity of nondomestic documents that Plaintiff knowns Barreto has—including an arbitral award dated December 29th, 2021, in favor of Barreto and against Plaintiff. Said arbitral award that was issued by an authority that Plaintiff consented to and is contractually obligated to respect and obey. (See, ¶ 44 on Page 12 of Exhibit 1)

79. The Case also questions Barreto's immunity as a tribal leader, and as the representative of a foreign sovereign (28 U.S.C § 1351).

a. In his capacity as the elected leader of BNNS, Barreto has provided the Department of Interior with his intent to establish federal acknowledgment of BNMS by the U.S.

b. As a representative of the rights, powers, and privileges (the "Rights") of his family led by Father and Lord MARCOS ALVES MUNIZ BARRETO a South American Indian leader of Urug aka BNMS-Brazil, which Rights are nondomestic to the United States, Barreto acts as an authorized representative of those Rights in the U.S.

c. As a representative of Urug, Barreto has established a bilateral communication with the President of the United States—the President consented to Barreto's representation of Urug in the U.S on December 22nd, 2021.

d. The President has also been further notified and has consented to Barreto's immunities that are similar, but greater, than those afforded to foreign ambassadors under 22 U.S.C. Chapter 6.

e. All of MB's personal rights, powers, and privileges—held under his assumed name, Christopher Columbus II, can be found on the Columbian Code starting with Page 111 of Exhibit 2, herein, or as the first document of Volume I of the Columbian Code published online at https://mickeybarreto.com/the-columbian-code or by the QR code, below:



80. This Notice of Removal will be reported to OFAC pursuant 31 CFR § 501.605.

81. **This Court Should Exercise Supplemental Jurisdiction to the Remaining State Actions of the Amendment**

82. Since this case, inter alia, presents federal questions, this court should also exercise supplement jurisdiction on the additional state actions contained in the Amendment pursuant 28 U.S.C Code § 1367.

83. **The Amount of the Controversy Supports this Removal.**

84. The amount in controversy exceeds US$75,000.00, exclusive of interests and costs.

85. The Case will decide the ownership of real estate evaluated by Plaintiff at $400,000,000.00 or four hundred million U.S. dollars.

86. **This Removal is Timely Filed**.

87. The Order for the Special Referee on the Case was served on Barreto on April 15, 2022.

88. By computing the time of 30 days pursuant to Rule 6.

89. **This Court Has Exclusive Jurisdiction Over the Case**.

90. This court has exclusive jurisdiction over this case according to section 3(a) of the Justice Against Sponsors of Terrorism Act because Plaintiff is subject to the jurisdiction of a court of the United States under section 1605B(b)(2) of title 28, United States Code.

91. **Conclusion**:

92. This removal is warranted under several federal statutes, is of interest of the United States and benefits the People of the United States.

93. Barreto will promptly provide Plaintiff with written notice via NYSCEF of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d) containing a true and correct copy of this Notice of Removal concurrently with the filing of a true and correct copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of New York.

WHEREFORE, Barreto respectfully notifies the Clerk of the United States District Court for the Southern District of New York that this action is hereby removed from the Supreme Court of the State of New York, County of New York, one of the courts of the New York State Unified Court System, to the United States District Court for the Southern District of New York.

Dated: May 16, 2022
      New York, New York

                                                Mickey Barreto
                                         Respondent, acting *pro se*
                                              481 8th Avenue, 2565
                                              New York, NY 10001
                                              mickey@mickeybarreto.com
                                                 (646) 598-4590

Copies:       -   Clerk of the Supreme Court of the State of New York, County of New York (Via NYSCEF)
                  -   Christina Browne, Attorney for Petitioner, via NYSCEF

Attachments:   Exhibits A through I